CASE NO. _____

| | | |
|---|---|---|
| PAUL DAVIS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| v | § | _____ JUDICIAL DISTRICT |
| | § | |
| TIKTOK, INC. and META | § | |
| PLATFORMS, INC. | § | |
| | § | |
| Defendants. | § | COLLIN COUNTY, TEXAS |

## PLAINTIFF'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

COMES NOW, Paul Davis ("Davis" or "Plaintiff"), and brings this his Verified Original Petition and Application for Temporary Restraining Order and Temporary and Permanent Injunctive Relief against Defendants, TikTok, Inc. and Meta Platforms, Inc. (together, "Defendants"), and respectfully represents the following:

## I.
## SUMMARY OF ACTION

1.      This is an action under Texas Civil Practice & Remedies Code ("CPRC") Chapter 143A ("Chapter 143A") for censorship of Plaintiff's viewpoint.   Under Chapter 143A, "[a] social media platform may not censor a user, a user's expression, or a user's ability to receive the expression of another person based on: (1) the viewpoint of the user or another person; (2) the viewpoint represented in the user's expression; or (3) a user's geographic location in this state or any part of this state." CPRC § 143A.002.

2.      Defendants have censored Plaintiff because of his conservative political viewpoints in violation of Chapter 143A by (1) banning his accounts, (2) restricting his accounts, (3) denying equal access or visibility to his accounts, and (4) otherwise discriminating against his expression. *See* CPRC § 143A.001(1).

3.      Accordingly, Plaintiff is entitled to a declaratory judgment and attorneys' fees under CPRC Chapter 37 and injunctive relief ordering Defendants restrained from censoring Plaintiff. CPRC § 143A.007. If Defendants fail to promptly comply with the Court's order, the Court must hold Defendants in contempt and "shall use all lawful measures to secure immediate compliance with the order, including daily penalties sufficient to secure immediate compliance." *Id.*

## II.
## DISCOVERY CONTROL PLAN

4.      Plaintiff intends to conduct discovery pursuant to a custom plan under Level 3 of Rule 190.4 of the Texas Rules of Civil Procedure ("TRCP").

## III.
## CLAIM FOR RELIEF

5.      Plaintiffs seeks only nonmonetary injunctive relief, and attorneys' fees.

## IV.
## PARTIES

6.      Plaintiff Paul Davis is an individual residing in Collin County, Texas.

7.      Defendant TikTok, Inc. ("TikTok") is a foreign corporation whose corporate office is located at 10100 Venice Blvd. #414, Culver City, CA 90232 and who may be served with process through its registered agent, Corporation Service

Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3136 or wherever it may be found.

8.     Defendant Meta Platforms, Inc. ("Meta") is a foreign corporation whose corporate office is located at 1 Hacker Way, Menlo Park, CA 94025 and who may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701-3218 or wherever it may be found.

## V.
## JURISDICTION

9.     The Court has subject matter jurisdiction over this claim pursuant to Tex. Civ. Prac. & Rem. Code ("CPRC") chapter 143A ("Chapter 143A").

10.     The Court has personal jurisdiction over Defendants pursuant to the Texas's long-arm statutes, CPRC § 17.041 et seq., because of their continuous and systematic contacts with the State of Texas and because Plaintiff's claim arises out of Defendants' specific contact with the State of Texas in censoring Plaintiff in violation of Texas law.  Defendants have purposefully availed themselves to be sued in Texas by their actions.

11.     Meta's forum selection clause in its user agreement specifying venue in California is void and unenforceable pursuant to CPRC § 143A.003 and as a matter of strong Texas public policy.  The Texas Legislature enacted Chapter 143A by passing H.B. 20 in the 87th legislative session.  Section 1 of H.B. 20 provides:

> The legislature finds that: (1) each person in this state has a fundamental interest in the free exchange of ideas and information, including the freedom of others to share and receive ideas and information; (2) *this state has a*

> *fundamental interest in protecting the free exchange of ideas and information in this state . . . .*

CENSORSHIP OF OR CERTAIN OTHER INTERFERENCE WITH DIGITAL EXPRESSION, INCLUDING EXPRESSION ON SOCIAL MEDIA PLATFORMS OR THROUGH ELECTRONIC MAIL MESSAGES, 2021 Tex. Sess. Law Serv. 2nd Called Sess. Ch. 3 (H.B. 20) (VERNON'S) (emphasis added).

12.    Pursuant to this stated legislative purpose, the Texas Legislature expressly prohibited social media platforms from contracting around the protections provided to Texans by Chapter 143A:

> (a) A waiver or purported waiver of the protections provided by this chapter is void as unlawful and against public policy, and a court or arbitrator may not enforce or give effect to the waiver, including in an action brought under Section 143A.007, notwithstanding any contract or choice-of-law provision in a contract.
>
> (b) The waiver prohibition described by Subsection (a) is a public-policy limitation on contractual and other waivers of the highest importance and interest to this state, and this state is exercising and enforcing this limitation to the full extent permitted by the United States Constitution and Texas Constitution.

CPRC § 143A.003.

13.    Pursuant to the foregoing, any contractual waiver or purported waiver of a Texan's right to sue a social media platform for censorship in the state of Texas is clearly unenforceable under HB 20.  This is especially true where the contractual venue is California—the very state from which all social media censorship is perpetrated against Texans.  It would defeat the entire purpose of HB 20 to allow platforms to dictate venue on their home turf in California because it guarantees Texans an unfriendly forum.  Thus, as a matter of law, Meta's forum selection clause cannot deprive a Texas court of personal jurisdiction.

# VI.
## FACTUAL ALLEGATIONS

14.     Defendant Meta operates the social media platforms Facebook and Instagram.  Plaintiff Paul Davis has been a Facebook user since 2004.  He first started using Instagram in 2012.  He used both platforms on a near daily basis until January of 2021 when both his Facebook and Instagram accounts were suddenly banned.  Davis lost years of his life in photographs, writings, opinions, and other memories that were precious to him.  The reason he was banned was for expressing his conservative viewpoints related to the January 6th protests at the US Capitol.  Both of these accounts were associated with the email address pauldavis@utexas.edu.  The Instagram account was under username @Who_Is_Paul_Davis or a substantially similar username.

15.     Davis started new Facebook and Instagram accounts in February or March of 2021.   Davis's current Facebook account is currently located at https://www.facebook.com/fireduptxlawyer1/ and his Instagram account is under username @fireduptxlawyer.  Sometime in September or October of 2021, Davis created an account on TikTok under the username @fireduptxlawyer.

16.     The primary purpose of these new social media accounts was to promote Davis's law firm practice.  As an employment law specialist, Davis has a lot of knowledge and useful information to share regarding employee rights under Title VII in the context of COVID-19 vaccine mandates in the workplace.

17.     Davis began making a new video almost every day on the topic of vaccine mandates and other legal topics of important to political conservatives.   This

information was in such demand that Davis's accounts grew quickly.  His TikTok account reached over 50,000 followers by early 2022 and his Instagram account reached over 8,000 followers.  Over 90% of Davis's law clients came to him through Instagram and TikTok during this time.

18.     On May 18, 2022, Davis's accounts exploded with new followers when he posted a video of himself calling out the school board president of McKinney ISD for violating the First Amendment rights of parents and other community members by targeting them for removal from a school board meeting because of their viewpoints in opposing the existence of sexually explicit and obscene books available in the McKinney school libraries and serving her with a lawsuit that is currently pending in the U.S District Court for the Eastern District of Texas as *Gonzales, et al. v. Dankel, et al.*, Case No. 4:22-cv-416.

19.     The video went viral, receiving over 8 million views on TikTok and over 40,000 views on Instagram.  Davis's TikTok account quickly jumped to over 150,000 followers and his Instagram following increased to over 15,000 followers.

20.     Davis continued to post videos and other content on both TikTok and Instagram on a daily basis and rarely missed a day.  His videos, which focus on a broad variety of topics related to law and politics from a conservative viewpoint, continued to be popular and widely viewed.  His Instagram videos often received over 20,000 views and rarely received less than 10,000 views.  His TikTok videos often

received over 50,000 views and rarely received less than 20,000 views.  His Instagram stories always received over 900 daily views, with very few exceptions.[1]

21.   Davis's followers continued to grow at a steady rate.  His Instagram following would usually grow at roughly 50 to 100 new followers per day and his TikTok account would usually grow at roughly 500 to 1,000 new followers per day. Nearly all of the comments on Davis's posts and stories reflected that his followers enjoyed his content because of the conservative political viewpoints Davis expressed.

22.   The popularity of Davis's accounts because of the conservative viewpoints expressed soon drew the ire of TikTok and Instagram.  Sometime in late June of 2022, Davis noticed one day that his Instagram story views suddenly fell from their consistent viewership of over 900 to under 200 and have remained at that level ever since.  That same day, Davis's daily number of new followers slowed to a trickle of only 5 to 10 new followers per day.  Davis's Instagram account had just reached 17.3k followers.  With shock, for the first time ever, Davis watched his Instagram following shrink back to 17.2k instead of increasing at the steady number it had been.

23.   Since Davis's content had remained constant, there was no explanation for this sudden drop in views and new follows other than that Meta had put restrictions on Davis's account by reducing its exposure in their viewership algorithms.  That same week Davis attended a conservative political conference in Tampa, Florida hosted by Turning Point USA.  Davis was thrilled to meet some of his favorite social media influencers.   However, when he met one of his favorite

---

[1] *See* Exhibit A, p. 1.

influencers, Anthony Rai, screenname @ConservativeAnt on Instagram, Davis watched in disbelief as Mr. Rai tried to follow Davis but was unable to locate Davis's account in the Instagram search function, thus further confirming the fact that Instagram was "shadowbanning" Davis.  Shadowbanning is the term used when a social media platform does not notify the user that their posts or account is being restricted but simply denies the user equal viewership by reducing visibility of the user's content or account to other users.  Many people have informed Davis that they have been unable to find him when searching for his account.[2]

24.     The evidence that Meta has been shadowbanning Davis's @fireduptxlawyer account since at least June 2022 is overwhelming.  Davis's account was steadily growing every day and sometimes by leaps and bounds whenever Davis made a particularly popular video.  However, once the shadowbanning started, Davis's account would not grow past 17.3 thousand followers.  Every time the account would reach 17.4 thousand followers, Davis would watch his follower count fall back down to 17.3 thousand.  This had never happened prior to June 2022.  Some of Davis's followers started commenting on his posts that they had to refollow him because Instagram had removed them from Davis's followers.  One followers even sent Davis a direct message to inform him that he has to "constantly 'refollow'" Davis.[3]

25.     Davis's followers notice a myriad of other evidence of shadowbanning and began commenting on posts or direct messaging Davis to inform him.  Screenshots of Davis's followers' statements, which are present sense impressions,

---

[2] *See id.* at p. 7, 8, 23, 25, 26.
[3] *Id.* at p. 13.

are attached hereto in Exhibit A.  Shadowbanning activities Davis's followers have pointed out include: (1) not being able to find Davis's account in searches, (2) having to refollow Davis despite never choosing to unfollow him, (3) noticing posts being up for a long time with zero engagement, (4) having likes on Davis's posts disappear, (5) not being able to see the entirety of Davis's posts because of censorship labels obscuring the content, (6) not being able to share Davis's content, and (7) not being able to tag Davis.[4]

26.    On August 22, 2022, Davis was overjoyed to login to his Instagram account and saw that his account was suddenly back to normal.  His story views went back up to over 1,000, he picked up over 50 followers that day and noticed the volume of comments on likes on his posts went back to pre-shadowban levels.  Davis's joy was short-lived, however.

27.    That same day, Davis posted a video in which he stated that there were strange circumstances surrounding the death of actress Anne Heche and asked his viewers if they believed it was possible Anne Heche could have been murdered because of her work related to exposing child sex trafficking. Meta contracts with third-party "fact-checkers" to censor posts.[5]  One of these so-called "fact-checkers," a company called "Lead Stories," censored Davis's video by placing a label on it stating that it was "False" and stated "Fact Check: Anne Heche Was NOT Murdered By The Illuminati, And Was NOT In A Movie About Jeffrey Epstein."  Davis emailed Lead Stories to point out that he never claimed Anne Heche was murdered by the

---

[4] *See* Exhibit A.
[5] *Id.* at p. 6.

Illuminati, nor did he claim she was in a movie about Jeffrey Epstein.[6] Davis pointed out that merely asking his audience whether they believed it was possible Anne Heche could have been murdered is his right to do under Texas law because it is an expression of his viewpoint.[7] Lead Stories, with the approval of Meta, refused to lift the false label on Davis's post.[8]

28.    This "fact-check" by Lead Stories resulted in Davis's Instagram account being shadowbanned again.  As soon as Lead Stories labeled the post as "False," Davis's story views went back down to below 200, his new followers slowed back down to a trickle, and comments and likes on his posts dramatically decreased.

29.    On September 3, 2022, Davis went live on Instagram and talked about news articles that he found interesting.  Some of the articles included reports on COVID-19 vaccine injuries and the lack of effectiveness of the vaccines.  When Davis finished the livestream, there were roughly twelve to fifteen notices in his account feed stating, "According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information.  Restrictions will apply to your account for 90 days."[9] Davis then emailed Meta and its outside counsel in Texas to inquire what Meta's basis was for claiming he had posted "false information."[10] Neither Meta nor its outside counsel responded.

---

[6] Exhibit D, p. 1.
[7] *Id.* at p. 9.
[8] *Id.* at p. 8.
[9] Exhibit A, pp. 4–5.
[10] Exhibit D, pp. 11–12.

30.     Around the same time, TikTok began regularly flagging Davis's video posts with "community guideline violations," despite the fact that none of Davis's posts violated any objective community guideline.[11]  TikTok's community guidelines have a "Harmful Misinformation" provision that allow TikTok to censor content merely because it expresses a conservative viewpoint TikTok deems to "incite[ ] hate or violence" or that it deems to be "conspiratorial," which are obviously subjective standards.[12]  The misinformation policy also prohibits "Medical misinformation," which is also a subjective standard allowing TikTok to pick and choose which scientific studies or data it deems to be real or false without any obligation to provide any factual basis for its decisions.[13]  Reasonable people can disagree on the reliability of various medical experts and studies, yet TikTok's guidelines give it the sole ability to arbitrarily override the viewpoint of its users as to which experts and studies are reliable and which are not.

31.     Davis soon began to see the views on his videos dramatically drop in number.  As a result Davis created a backup account, @fireduptxlawyer2.0, but this account also started getting flagged with numerous community guidelines violations because of the conservative viewpoint expressed.

32.     When Davis attempted open his TikTok account on August 3, 2022 to post a video, to his horror, there was a notice that his account was "permanently

---

[11] Exhibit B, pp. 5, 7, 8, and 9.
[12] TikTok Guidelines, *Integrity and Authenticity*, available at https://www.tiktok.com/community-guidelines?lang=en (last visited November 20, 2022).
[13] *Id.*

banned due to multiple violations of [TikTok's] Community Guidelines."[14]   As of August 3, 2022, Davis had over 170,000 followers, and the vast majority of his law firm clients came to him through TikTok.  Davis tried to post videos on his backup account, which only had around 4,000 followers, but TikTok banned his backup account only a few days later, on or about August 12.[15]

33.     Davis emailed TikTok's legal department to inquire as to how he had violated TikTok's "community guidelines" and submitted an appeal.[16] TikTok refused to restore Davis's accounts, and, in conclusory fashion, merely stated Davis had violated its "Integrity and Authenticity policy."[17]   When asked specifically, TikTok refused to specify how Davis had violated this policy.[18] Not surprisingly, the Integrity and Authenticity policy includes the subjective "Harmful misinformation" guidelines.

34.     Davis started a third account, @fireduptxlawyer3.0, and had several initial videos receive over 10,000 views, despite having few followers.  Soon, TikTok imposed severe shadowbanning on Davis's third account as well, and Davis was unable to get over 1,000 on any video, no matter how hard he worked to make it engaging.[19]   Davis became discouraged and stopped trying to post daily videos because almost no one would seem them.  Then, on or about November 11, 2022, TikTok banned Davis's @fireduptxlawyer3.0 account.[20]

---

[14] *Id.* at p. 1.
[15] *Id.* at p. 2.
[16] Exhibit C, p. 1.
[17] *Id.* at p. 2.
[18] *Id.* at p. 3.
[19] *Compare* Exhibit B, p. 4 with p. 6.
[20] *Id.* at p. 3.

35.     On November 12, 2022, Davis attempted to post a link to TEXITnow.org on his current Facebook account to advocate for placing a referendum on Texas independence on the ballot.  This is advocacy for a legal process that is not prohibited under any US or Texas law.  Nonetheless, Meta banned Davis's attempt to post this link, stating that the post violated "Community Standards."[21]

36.     For Davis, expressing his opinions on Instagram and TikTok through making creative videos and posts is more than simply a client development effort, thought this is a very important aspect.  Creating engaging content to express his opinions on Instagram and TikTok is an exercise of his fundamental First Amendment right to free speech and participation in the public square of ideas.  Davis believes that the foundation of a robust democratic republic involves a vigorous public debate of ideas.  It is also a hobby that brings Davis much satisfaction.  Like a visual artist, Davis found great enjoyment in using his creativity to make engaging videos and other posts that inspires discussion from his followers about issues of importance to Davis.

37.     For this reason, Davis works hard and spends countless hours thinking of and executing creative ways to express his views through social media content. Davis believes his work is important because it influences public opinion on issues of importance to him and his followers.  For Defendants to censor his content and prevent his followers and other users from seeing his content has a tremendous effect on his emotional well-being.  It gives Davis the sense that he is living in an Orwellian

---

[21] Exhibit A, p. 28.

society where platforms such as Meta and TikTok act as the "thought police" to tell Davis what he can and cannot say in the public square of social media.  There can be few things more damaging to the psychology of a human being than silencing his voice and ability to express his ideas to the world.

## VII.
## CAUSES OF ACTION

**Count One: Declaratory Relief for Social Media Censorship – Tex. Civ. Prac. & Rem. Code § 143A against TikTok.**

38.     Plaintiff incorporates all of the factual allegations stated above and in the attached exhibits as though fully set forth herein.

39.     Tex. Civ. Prac. & Rem. Code ("CPRC") Chapter 143A was passed into law by the 87th Texas Legislature and became effective on December 2, 2021. This is a case of first impression regarding this new statute as there is no Texas appellate precedent.

40.     CPRC § 143A.002 provides: "(a) a social media platform may not censor a user, a user's expression, or a user's ability to receive the expression of another person based on: (1) the viewpoint of the user or another person; (2) the viewpoint represented in the user's expression or another person's expression; or (3) a user's geographic location in this state or any part of this state."

41.     "'Censor' means to block, ban, remove, deplatform, demonetize, de-boost, restrict, deny equal access or visibility to, or otherwise discriminate against expression." CPRC § 143A.001

42.     CPRC § 143A.007 provides: "(a) a user may bring an action against a social media platform that violates this chapter with respect to the user. (b) If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover: (1) declaratory relief under Chapter 37, including costs and reasonable and necessary attorney's fees under Section 37.009; and (2) injunctive relief."

43.     Subsection (c) provides: "If a social media platform fails to promptly comply with a court order in an action brought under this section, the court shall hold the social media platform in contempt and shall use all lawful measures to secure immediate compliance with the order, including daily penalties sufficient to secure immediate compliance."  CPRC § 143A.007(c).

44.     TikTok is a social media platform that has more than 50 million active users in the United States during a calendar month.

45.     Plaintiff is a TikTok user who resides in the State of Texas.

46.     TikTok censored Plaintiff because of his viewpoints in violation of Chapter 143A when it (1) banned Plaintiff's @fireduptxlawyer, @fireduptxlawyer2.0, and @fireduptxlawyer3.0 accounts; (2) banned many of Plaintiff's posts from all three accounts; and (3) denied equal visibility to Plaintiff's posts and accounts.

47.     Accordingly, Plaintiff seeks declaratory relief under Chapters 37 and 143A of the CPRC that TikTok has unlawfully censored him and seeks a temporary restraining order and temporary and permanent injunctive relief against TikTok ordering it to immediately reinstate his @fireduptxlawyer, @fireduptxlawyer2.0, and

@fireduptxlawyer3.0 accounts without restrictions and with equal visibility as other users of different viewpoints.

**Count Two: Declaratory Relief for Social Media Censorship – Tex. Civ. Prac. & Rem. Code § 143A against Meta for shadowbanning his @fireduptxlawyer Instagram account and banning his recent Facebook post.**

48.    Plaintiff incorporates all of the factual allegations stated above and in the attached exhibits as though fully set forth herein.

49.    Meta censored Plaintiff's @fireduptxlawyer Instagram account because of his viewpoints in violation of Chapter 143A by (1) denying equal visibility to the account, posts, and stories; (2) allowing Lead Stories to place a "False" label on his Anne Heche video; and (3) placing restrictions on Plaintiff's account due to Plaintiff's Instagram live session and posts in which he expressed viewpoints related to the COVID-19 pandemic among other views.

50.    Meta censored Plaintiff's Facebook account because of his viewpoint by banning his November 12, 2022 post containing the TEXITnow.org.  It also appears that Meta has also denied equal visibility to Plaintiff's Facebook account posts and stories where the number of likes seems unusually low for an account with 2.9k friends.

51.    Accordingly, Plaintiff seeks declaratory relief under Chapters 37 and 143A of the CPRC that Meta has unlawfully censored him and seeks a temporary restraining order and temporary and permanent injunctive relief against Meta ordering it to immediately remove all restrictions from his @fireduptxlawyer Instagram account and Facebook account, to remove the "False" label from his August

21, 2022 Anne Heche post, and to lift the restrictions related to posting the TEXITnow.org link and other other restrictions on his Facebook account.

**Count Three: Declaratory Relief for Social Media Censorship – Tex. Civ. Prac. & Rem. Code § 143A against Meta for banning his Facebook and Instagram accounts.**

52.     Plaintiff incorporates all of the factual allegations stated above and in the attached exhibits as though fully set forth herein.

53.     Plaintiff has requested that Meta restore his Facebook and Instagram accounts associated with the email address pauldavis@utexas.edu.  Notwithstanding, Meta has refused and continues to ban these accounts because of Plaintiff's conservative viewpoints expressed regarding the events of January 6, 2022.

54.     Accordingly, Meta is currently censoring Plaintiff by refusing to lift the ban on these accounts in violation of Chapter 143A.

55.     Plaintiff seeks declaratory relief under Chapters 37 and 143A of the CPRC that Meta has unlawfully censored him and seeks a temporary restraining order and temporary and permanent injunctive relief against Meta ordering it to immediately restore Davis's Facebook and Instagram accounts associated with the email address pauldavis@utexas.edu.

**VIII.**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION**

56.     Plaintiff incorporates all of the factual allegations stated above and in the attached exhibits to this Petition as though fully set forth herein.

57.     Plaintiff asks the Court to order the following injunctive relief against Defendant TikTok: (1) lift its bans on Plaintiff's @fireuptxlawyer, @fireduptxlawyer2.0, and @fireduptxlawyer3.0 accounts and restore these accounts; (2) restore all banned posts from all Plaintiff's accounts; and (3) lift all restrictions from all Plaintiffs' accounts and allow equal viewership to Plaintiff's accounts under TikTok's algorithm.

58.     Plaintiff has filed an arbitration against TikTok regarding his @fireduptxlawyer and @fireduptxlawyer2.0 accounts pursuant to the arbitration agreement contained in TikTok's Terms of Service.[22]  Plaintiff's @fireduptxlawyer3.0 account is not subject to the TikTok arbitration agreement because Plaintiff opted out within thirty days of creating the account, pursuant to the Terms of Service.  The Terms of Service specify that the "U.S. Federal Arbitration Act governs the interpretation and enforcement" of TikTok's arbitration agreement.[23]  "[U]nder the FAA, the trial court may enter injunctive relief to preserve the status quo pending arbitration."  *Frontera Generation Ltd. P'ship v. Mission Pipeline Co.*, 400 S.W.3d 102, 109 (Tex. App.—Corpus Christi–Edinburg 2012, no pet.).

59.     Because TikTok has, so far, failed meet its obligation under the arbitration agreement to pay the arbitration filing fee, an arbitrator has not been appointed yet.  Thus, unless and until and arbitrator is appointed and enters an

---

[22] TikTok Terms of Service, *Arbitration and Class Action Waiver*, available at https://www.tiktok.com/legal/terms-of-service-us?lang=en (last visited November 20, 2022).
[23] *Id.*

injunctive under Chapter 143A, Plaintiff will continue to suffer irreparable harm. Therefore, injunctive relief pending arbitration is appropriate.

60.     Plaintiff further asks the Court to order the following injunctive relief against Defendant Meta: (1) lift all restrictions from Plaintiff's @fireduptxlawyer Instagram account and restore equal viewership of all aspects of this account under the Instagram algorithm; (2) remove the "False" label from the August 22, 2022 Anne Heche post; (3) lift the ban on Plaintiff's Facebook account related to posting the TEXITnow.org link and lift any restrictions on equal viewership of all aspects of this account; and (4) lift its bans on Plaintiff's Instagram and Facebook accounts associated with the email address [pauldavis@utexas.edu](mailto:pauldavis@utexas.edu) and restore these accounts without restrictions.

61.     Plaintiff requests that the Court impose daily penalties on Defendants for each day that they continue to censor Plaintiff pursuant to Tex. Civ. Prac. & Rem. Code 143A.006(c) in an amount sufficient to secure compliance with the Court's order. Plaintiff proposes an initial daily fine of $10,000 as to each defendant, which doubles every day the defendant continues to censor Plaintiff in violation of the Court's order pursuant to Chapter 143A, i.e. $20,000, then $40,000, then $80,000, then $160,000, then $320,000, etc.  Each day's fine should be added to the previous day's fine.  For instance, two days would be $30,000, three days would be $70,000, etc.

62.     Plaintiff has a probable right to relief on the merits at trial because it is undeniable that Defendants have censored Plaintiff in violation of Chapter 143A.  As evidenced in the screenshots attached hereto, Defendants have admitted to many of

the censorship activities described herein through email or a notice on the respective platform.  The present sense impressions of Plaintiff's followers further evidence the censorship.  Regardless, there is no plausible explanation for the sudden decrease of views, new follows, and engagement on Plaintiff's active accounts other than that Defendants are reducing the visibility of Plaintiff's accounts and posts to other users. Despite requests from Plaintiff, neither Defendant has provided any explanation for the censorship activity that involves any reason other than because of viewpoint.

63.    Plaintiff suffers immediate and irreparable harm every day that Defendant continues to censor Plaintiff.  As the U.S. Supreme Court and the Fifth Circuit have both held, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 U.S. App. LEXIS 4347, at *19 (5th Cir. 2022) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012)).

64.    Although *Elrod* and *Opulent Life* were First Amendment actions against government or government officials, the *Sambrano* court held, "[W]e do not agree that the fact that this is a statutory action instead of an action under the First Amendment meaningfully transforms what a plaintiff must show to demonstrate irreparable injury."  *Id.*  Moreover, *Sambrano* involved a Title VII statutory action against United Airlines, a private company.

65.    Here, the Texas Legislature found that: "social media platforms function as common carriers, are affected with a public interest, are central public forums for

public debate, and have enjoyed governmental support in the United States." H.B. 20, Section 1, (3).  Thus, the Texas Legislature recognized that social media platforms are the modern day public square for free speech and are common carriers for this purpose.  Accordingly, Defendants' actions in censoring Plaintiff unquestionably constitute immediate and irreparable injury by depriving him of his First Amendment right to free speech in the public square of social media.

66.    Furthermore, Defendants' actions in censoring Plaintiff have caused and continue to cause severe mental anguish damages to Plaintiff that cannot be remedied at law.  Plaintiff works extremely hard to create persuasive and engaging content to make his viewpoints known in the public square.  It is difficult to put into words how emotionally damaging it is to have one's voice silenced by censorship at the hands of social media giants after putting forth so much effort to creatively express opinions in the public square.  It feels like being helplessly suffocated at the hands of someone with superior strength.  This irreparable harm to Plaintiff in being stripped of his most fundamental right of free speech will continue on a daily basis unless the Court restrains Defendants from censoring Plaintiff in violation of Chapter 143A.

67.    In addition, Plaintiff uses his @fireduptxlawyer accounts as his primary means of attracting clients to his law practice.  Since being banned from TikTok and shadowbanned on Instagram, Plaintiff has seen a massive drop in new client appointments.  Prior to being censored, Plaintiff had a new client appointment nearly every single business day and had to limit these appointments to one per day to avoid

being overwelmed.  Within a few weeks of being banned on TikTok, Plaintiff's new client appointments dropped off to one or two new client appointments per week.  If the Court does not enter a temporary restraining order, Plaintiff's sole means of earning a living will continue to be irreparably harmed.

68.    Plaintiff has no adequate remedy at law because monetary damages are not available under any applicable law to remedy the harm Plaintiff continues to suffer on a daily basis.

69.    Plaintiff has notified Defendants of its application for temporary restraining order by email to TikTok's outside counsel, Wilson Sonsini, and to Meta's outside counsel, Kirkland & Ellis, and to two internal managers with Meta since it is unclear whether Kirkland & Ellis has been retained on this matter.

70.    Plaintiff asks the Court enter a temporary restraining order consistent with the injunctive relief requested above, to set a temporary injunction hearing, and, after the hearing, issue a temporary injunction against Defendants granting the same relief requested above in Plaintiff's application for temporary restraining order pending trial on the merits.

71.    Plaintiff is willing to post bond.  Bond should be set at a nominal amount because there is no risk of harm to Meta in granting the injunctive relief requested herein.  This is because the United States Court of Appeals for the Fifth Circuit has found that social media platform providers do not have a First Amendment right to censor its users.  *NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 445 (5th Cir. 2022)

("Today we reject the idea that corporations have a freewheeling First Amendment right to censor what people say.").

72.    After a trial on the merits, Plaintiff requests the Court issue a permanent injunction, forever restraining Defendants from censoring Plaintiff in violation of Chapter 143A.

## IX.
## ATTORNEYS' FEES

73.    Plaintiff requests his reasonable attorneys' fees and costs of filing this lawsuit pursuant to Tex. Civ. Prac. & Rem. Code §§ 37.009 and 143A.007(a)(1).

## X.
## CONDITIONS PRECEDENT

74.    All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## XI.
## JURY DEMAND

75.    Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## XII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paul Davis prays that the Court grant his application for temporary restraining order in the form of order attached hereto, grant a temporary injunction extending the same relief pending trial on the merits, grant a permanent injunction after trial on the merits and award Plaintiff his reasonable

attorneys' fees and court costs, grant prejudgment and postjudgment interest, and grant all other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *Paul Davis*
Paul Davis
Texas Bar No. 24078401
Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com

PRO SE

<u>UNSWORN DECLARATION IN LIEU OF VERIFICATION</u>

My names is Paul Davis, my date of birth is July 2, 1981 and my address is 9355 John W. Elliott Dr., Suite 25454, Frisco, TX 75033.  I declare under penalty of perjury that the factual allegations contained in the foregoing petition are true and correct to the best of my knowledge and recollection.  I further declare under penalty of perjury that the screenshots attached hereto as exhibits are all true and correct copies of images that I screenshot from my iPhone.  I further declare under penalty of perjury that the images of emails attached hereto are true and correct images of the emails they depict.

Executed in Collin County, State of Texas on the 20th day of November 2022.

/s/ *Paul Davis*
Paul M. Davis

# EXHIBIT A
# META CENSORSHIP







Saturday
10:50 PM

Edit

warning. Trump pulls the strings 2h

♡  Reply  Send  Message

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 **andreakuperman** started following you. 3h     Follow

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 3h

 **miley_ed** commented: I agree with you, except I wouldn't rule out



**Saturday**

10:46 PM

Edit

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h



## False

Independent fact-checkers say this information has no basis in fact.



**Fact-Checker:** Lead Stories

**Conclusion:** False

**More Information:** Fact Check: Anne Heche Was NOT In A Movie About Jeffrey Epstein, Contrary To Murder Theories | Lead Stories

You can **send them an email** if you think there was a mistake.

**Learn more** about how Instagram is working with independent fact-checkers to reduce false information.

Exhibit A - Page 5



## False

Independent fact-checkers say this information has no basis in fact.



**Fact-Checker:** Lead Stories

**Conclusion:** False

**More Information:** Fact Check: Anne Heche Was NOT Murdered By The Illuminati, And Was NOT In A Movie About Jeffrey Epstein | Lead Stories

You can **send them an email** if you think there was a mistake.

**Learn more** about how Instagram is working with independent fact-checkers to reduce false information.

Exhibit A - Page 6













9:14 

 LTE

<  **Gregg**
spikesdaddy

[ View profile ]

1:40 PM



primetimestein



Good afternoon sir.  I have to constantly "refollow" you, as apparently Instagram likes to unfollow you on my behalf.  Imagine that. Keep up the good work, LOVE what you are doing for us!! GOD BLESS you and yours!



Accept message request from **Gregg (spikesdaddy)**?

If you accept, members will also be able to call you and see info like your activity status and when you've read messages.

Block          Delete          Accept





7:02



# Your Post Is Missing Context

Independent fact-checkers at PolitiFact say your post could mislead people without additional context. A notice was added to your post on October 20.

**Your post** >
Posted on October 18 at 6:10 am

**Full fact-check** >
See conclusion from PolitiFact

**Delete Post**
Posts from accounts that repeatedly share false information won't appear in certain places on Instagram for up to 90 days. Other restrictions might apply to these accounts. Deleting posts that contain false information won't affect account restrictions and deleted posts can't be appealed with independent fact-checkers.

Learn more about how Instagram is working with independent fact-checkers to reduce false information.

    

3:36

fireduptxlawyer



A researcher works inside a laboratory during the development of a vaccine in a file photo. (Reithera/Handout via Reuters)

October 17, 2022 | Jack Phillips

## Boston University Researchers Develop COVID Strain With 80 Percent Kill Rate in Mice

⚠ Missing Context. Independent fact-checkers say information in this post could mislead people.   ›

View insights                    Boost post







4:41

# fireduptxlawyer 

⊕  ☰



**670**
Posts

**17.4K**
Followers

**891**
Following

**Paul Davis**
God-fearing, freedom-fighting, ultra-MAGA
🔥⬆️TX lawyer for patriots ✝️⚖️🇺🇸 J6er
Book appointments & more in my linktree
linktr.ee/fireduptxlawyer

**Creator tools**
20K accounts reached in the last 30 days.

**Edit profile**


Opinions


My Projects


God stuff


Activism


Travel



7:24



# Your Post Is Missing Context

Independent fact-checkers at TheJournal.ie say your post could mislead people without additional context. A notice was added to your post on September 22.



**Your post**
Posted on September 20 at 10:09 am  >

**Full fact-check**
See conclusion from TheJournal.ie  >

## Delete Post

Posts from accounts that repeatedly share false information won't appear in certain places on Instagram for up to 90 days. Other restrictions might apply to these accounts. Deleting posts that contain false information won't affect account restrictions and deleted posts can't be appealed with independent fact-checkers.

Learn more about how Instagram is working with independent fact-checkers to reduce false information.

    



**#FtheWEF till the day I die**
@NEOintheMCR · **Follow**



🙇 You explain the Pfizer data (1,200+ deaths)
🙇 You explain VAERS (30,000+ deaths)
🙇 You explain excess deaths higher after Vs than
before
🙇 You explain insurance co payouts
🙇 You explain birth rate collapse
🙇 You explain 'dies suddenly'

⁉️ And still they inject. Why?





11:58

< **Notifications**                          Filter

**Priority**

 **anjiemcpeters** commented: Insta is def shadow banning you. Yesterday you posted the same message to various platforms as usual and insta didn't send me a notification. I went to search for your profile and it didn't show up but fireduptxlawyer2 did. I was able to get to fireduptxlawyer through that account. Then I tried searching for you again and your page showed up in the search. This is not a glitch, this is censorship absolutely in my opinion based on current viewpoint discrimination tactics. I'm proud of you Paul! I really want to help, I just don't quite know how..... 🙏 56m 

♡  Reply  Send  Message

 **thegoldenbumblebee** commented: @anjiemcpeters yup. Unfortunately. 1d 

♡  Reply  Send  Message

**New**

 **dtrepking, bohannonyule** and **24 others** liked your reel. 12m 

 **trentherbert, my2centstx** and **696 others** liked your photo. 16m 

 **hello_heathero** commented: Thankful someone is finally taking action. I am 

        



6:58



### ‹ Activity                    Filter


done. But this is a poor excuse for reasoning. You sound like a Tory. You don't bow or kneel to tyranny at any point. You stand and fight. And if that upsets the FBI/DOJ we'll then stack up Fed Boys. 29m 

♡  Reply  Send  Message

  **jacdawsonpics, friz_the_shiz** and **644 others** liked your reel. 40m 

  **jacdawsonpics** commented: You're definitely being shadow banned, which means you're doing something right. Last night my husband tried to look you up to give you a follow by searching for your username - typing it exactly letter by letter, but it wouldn't come up. I told him to go to my profile and search your name under the list of people I follow. He did and your name came right up. I've been following you for a little while, and it happens whenever I search your username. The same goes for most all the freethinkers I follow. The powers that be consider you a threat. There is no room in their world for critical thinkers. Keep up the good work! 42m 

♡  Reply  Send  Message

  **theartistalgernon, andreahobart** and **1,018 others** liked your photo. 50m 

  **zirannda** started following you. 1h                    **Follow**

        

11:55



**Chronicles Distilling**
chroniclesdistilling

**Chronicles Distilling**

chroniclesdistilling · Instagram

2.9K followers · 342 posts

Follows you

You both follow terrencekwilliams and 8 others

[ **View profile** ]

12:49 AM

 You are being shadow banned

I tried looking you up and following you, and I typed in your name slowly "fireduptxlawye" and you never can up, even when I clicked "see all results" with every single letter correct, except having the "R" on the end, it should pop up like everyone else's pops up with similar names as you type the full name. It wasn't until I typed it al with the "R" at the end, "fireduptxlawyer" that it finally showed your profile.

Try it on someone's phone that you don't know sometime.



 Message...          

Exhibit A - Page26



**Comments**  • • •

Top comments ⌄



**ashleyrood** Blocked from sharing somehow... @kelseyleekeller

6m    Reply    Message    Send

**fireduptxlawyer** @ashleyrood figures. IG is shadowbanning me 🙁

4s    Reply    Send

**jazzcat2004** 👏 👏 👏 👏 I only wish that the amounts were justifiable!

15m    Reply    Message    Send



❤️  🙌  🔥  👏  😢  😍  😮  😂

Add a comment as fireduptxlawyer...



# EXHIBIT B
# TIKTOK CENSORSHIP













11:22

Appeal

⚠️

# Video removed

This video violates our Community Guidelines.

**Video details**

"Repeat after mainstream media: "This is extremely dangerous to our Democracy." Now, say it again. #propaganda #projectmockingbird Follow @fireduptxlawyer on GETTR (most active), Rumble, Truth Social, and Telegram for uncensored content. #conservativehypehouse #conservativetiktok #trumptok #conservative #patriots #trump #maga #saveamerica #usa #trump2024 #holdtheline #lionsnotsheep #freedom #libertyordeath #fjb #letsgobrandon #truther #livefreeordie "



Posted on 10-04 at 08:12

**Violation reasons**

Integrity and authenticity

Trust forms the foundation of our community. We do not allow activities that undermine the integrity of our platform or the authenticity of our users. We remove content and accounts that involve spam or f**... See more**



9:36   LTE

<



# Appeal received

We'll send you a notification as soon as we have an update.

### Video details

"It's obvious from this rhetoric that the deep state is planning an October surprise false flag event or series of events that will be blamed on MAGA and used to try and stop the GOP from taking Congress back in November. #conservative #patriots #maga #saveamerica #usa #usa 🇺🇸 #trump #trump2024 #holdtheline #lionsnotsheep #freedom #fjb #letsgobrandon #ultramaga #truther #livefreeordie" 

Posted on 09-01 at 08:46

### Violation reasons

#### Integrity and authenticity

Trust forms the foundation of our community. We do not allow activities that undermine the integrity of our platform or the authenticity of our users. We remove content and accounts that involve spam or fake engagement, impersonation, or misleading information that causes significant harm. **See Community Guidelines.**

Read our **Community Guidelines**





12:02

&lt; Appeal



**Video removed**

This video violates our Community Guidelines.

**Video details**

"Oh and by the way, we ARE the majority! #conservativememes #magamemes #trumpmemes #conservative #patriots #maga #saveamerica #usa #usa🇺🇸 #trump #trump2024 #holdtheline #lionsnotsheep #freedom #fjb #letsgobrandon #ultramaga #truther #livefreeordie #conservativehypehouse #conservativetiktok #trumptok"

Posted on 09-08 at 11:36

**Violation reasons**

Hateful ideology

TikTok is a diverse and inclusive community that does not tolerate discrimination.

Hateful ideologies are clearly hostile toward people because of their protected attributes. We remove content that promotes**... See more**

**Feedback**

Do you agree with the decision to remove your



2:38   LTE

‹   Appeal

⚠️

# Video removed

This video violates our Community Guidelines.

**Video details**

"#conservativehypehouse
#conservativetiktok #trumptok
#conservative #patriots #trump #maga
#saveamerica #usa #trump2024
#holdtheline #lionsnotsheep #freedom
#libertyordeath #fjb #letsgobrandon
#ultramaga"

Posted on 08-30 at 06:43

**Violation reasons**

Integrity and authenticity

Trust forms the foundation of our community. We do not allow activities that undermine the integrity of our platform or the authenticity of our users. We remove content and accounts that involve spam or f**... See more**

**Feedback**

Do you agree with the decision to remove your video?

Agree          Disagree

3:05

Appeal

⚠️

# Video removed

This video violates our Community Guidelines.

**Video details**

"Follow @fireduptxlawyer on GETTR, Truth Social, Instagram, and Telegram for censorship-free content. #conservativehypehouse #conservativetiktok #trumptok #conservative #patriots #trump #maga #saveamerica #usa #trump2024 #holdtheline #lionsnotsheep #freedom #libertyordeath #fjb #letsgobrandon #truther #livefreeordie "

Posted on 09-22 at 11:23

**Violation reasons**

Integrity and authenticity

Trust forms the foundation of our community. We do not allow activities that undermine the integrity of our platform or the authenticity of our users. We remove content and accounts that involve spam or f**... See more**

**Feedback**

Do you agree with the decision to remove your

# EXHIBIT C
# TIKTOK EMAILS

## Please Help: Account Banned for Unknown Reason

From  Paul M Davis <paul@fireduptxlawyer.com>

To    TikTok Support<feedback@tiktok.com>

Date  Friday, August 12th, 2022 at 8:26 AM

Good morning,

I run a small civil rights law practice, and I rely on Tik Tok for most of my client lead generation. By making informational videos about civil rights and employee rights in the workplace, I was able to build up to a following of over 170k. Last Wednesday, I was devastated to find a message when I opened Tik Tok that my account had been "permanently banned."

Because I get most of my clients through Tik Tok, I have been very careful to try and comply with Tik Tok's community guidelines. Though I have had some community guidelines violations in the past, I learned from those and have done my best to avoid further violations. I believe it has been months since I've had a community violation that did not get reversed after further review. So, I am baffled as to why my account has suddenly been banned. This is disastrous for my business and my ability to make a living. Would you please review this situation help me get my account back? I do not understand why I have suddenly been banned. My username is @fireduptxlawyer.

In addition, I am currently unable to access my backup account @fireduptxlawyer2.0. The app keeps rejecting every password I can think of, and it won't allow me to reset the password. I would be very grateful for your assistance. Thanks in advance.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr. #25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Tik Tok, Instagram, Twitter, Facebook,
GETTR, and Truth Social.

Sent with Proton Mail secure email.

Exhibit C - Page  1

------- Original Message -------
On Sunday, August 14th, 2022 at 10:38 AM, TikTok Support <feedback@tiktok.com> wrote:

##– Please type your reply above this line –##

Hi there,

Thanks for contacting TikTok.

We understand how important your account is to you. After further review, your account will remain permanently banned due to a violation of our Integrity and authenticity policy.

Please note that our Community Guidelines apply to both public and private videos, as well as hashtags and links to third party websites. For further information on your account violation, please reference our Community

8/31/22, 9:48 PM

x

https://mail.protonmail.com/u/8/all-mail/adOMahTWpvMkRDF-oSW..

Guidelines: https://www.tiktok.com/community–guidelines?lang=en

Best,
The TikTok Team

[PMZ8O3-OYZKK]

Exhibit C - Page  2

## Re: Your TikTok Support Inquiry - RE: Follow up from TikTok Support

From  Paul M Davis <paul@fireduptxlawyer.com>

To     TikTok Support<feedback@tiktok.com>

Date  Sunday, August 14th, 2022 at 4:51 PM

Good afternoon,

Thank you for the response. I reviewed the integrity and authenticity policy. I have reviewed it before and have been careful not to violate it. I am not aware of any manner by which I have violated this policy and have done my best not to violate it. I humbly request that you please let me know specifically how I violated this policy so that I can be certain not to violate it in the future and that you please give me another chance.

I would not ask if it were not absolutely essential to my business to get my account back. It is my main source of client leads, and, with the economy in the state that it is in right now, I simply cannot afford to lose my primary source of marketing for my law practice. I can assure you that I have no intention of violating Tik Tok's community guidelines, and any violations were purely unintentional.

If you could please let me know how I violated this policy so that I can avoid future violations and give me another chance, I would be extremely grateful. This is my main source of income, so I humbly ask that you please give me another chance.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr. #25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Tik Tok, Instagram, Twitter, Facebook,
GETTR, and Truth Social.

Sent with Proton Mail secure email.

Exhibit C - Page 3

## RE: TikTok Legal Counsel

From  Paul M Davis <paul@fireduptxlawyer.com>

To    Weibell, Tony<aweibell@wsgr.com>

CC    CJ Grisham<cj@fireduptxlawyer.com>

Date  Thursday, November 10th, 2022 at 7:39 PM

Tony,

The arbitration demand is mine. TikTok banned my account which had over 170k followers and was my primary source of business leads. I will also be suing to get an injunction in Texas court in the coming week. Please find attached a copy of my arbitration demand. If TikTok will restore my banned account and lift restrictions, I will refrain from filing suit in Texas court. Our statute is clear that TikTok's ban of my account is unlawful and that I am entitled to an injunction with daily fines to ensure compliance and my attorneys' fees. Please advise if TikTok will reinstate my accounts, @fireuptxlawyer and @fireuptxlawyer2.0 with no shadowbanning. You can review Texas Civil Practice & Remedies Code Chapter 143A, which lays out my rights and remedies pretty clearly.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook

Sent with Proton Mail secure email.

------- Original Message -------
On Thursday, November 10th, 2022 at 3:12 PM, Weibell, Tony <aweibell@wsgr.com> wrote:

> Hi CJ,
>
>
> TikTok reached out because they received a notice from AAA that your firm had filed an arbitration

Exhibit C - Page 4

demand. TikTok did not know what the arbitration was about because they never received a copy of the demand, and they were not aware of any correspondence if you had sent something to them.

Did you reach out to the TikTok legal email I provided below about your issue and did they fail to respond?

Let me know if we can connect by phone to talk about the arbitration demand, and please send a copy to me if you can.

Thanks,

Tony

_____

**Anthony J Weibell | Partner | Wilson Sonsini Goodrich & Rosati**

650 Page Mill Road | Palo Alto, CA 94304-1050 | direct: 650.354.4134 | aweibell@wsgr.com

Exhibit C - Page 5

**RE: TikTok Legal Counsel**

---

From   Weibell, Tony <aweibell@wsgr.com>

To     Paul M Davis<paul@fireduptxlawyer.com>

CC     CJ Grisham<cj@fireduptxlawyer.com>

Date   Thursday, November 10th, 2022 at 8:00 PM

---

Thanks Paul, my contacts at TikTok didn't see anything come through the normal legal channels, so maybe when they take a look at this they will see an error and reinstate the account. I'll take this back to them and see what they say, and then maybe we can set up a call to discuss.

Thanks,

Tony

---

**Anthony J Weibell | Partner | Wilson Sonsini Goodrich & Rosati**
650 Page Mill Road | Palo Alto, CA 94304-1050 | direct: 650.354.4134 | aweibell@wsgr.com

Exhibit C - Page 6

### RE: TikTok Legal Counsel

From   Paul M Davis <paul@fireduptxlawyer.com>

To       Weibell, Tony<aweibell@wsgr.com>

Date   Monday, November 14th, 2022 at 1:35 PM

Hi Tony,

Thanks for letting me know. As requested, I'm attaching the pre-arbitration notice I sent to Legal@TikTok.com as required by the user terms. Also attaching the arbitration demand and my email correspondence with TikTok.

Hopefully this was all just a mistake as a result of AI or something. As you can see in my emails, I have tried my best to abide by TikTok's community guidelines. My posts were constantly flagged with violations but I won nearly every single appeal, so I was shocked when my entire account was banned.

If you could get TikTok to reinstate my accounts, that would be fantastic. I just saw also that my @fireduptxlawyer3.0 account is now banned as of Friday. I guess someone at TikTok doesn't like me. I plan to file my lawsuit Thursday or Friday, so please let me know before then if TikTok will reinstate my accounts, included @fireduptxlawyer, @fireduptxlawyer2.0, and @fireduptxlawyer3.0 and lift any shadowban restrictions.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook


Sent with Proton Mail secure email.

Exhibit C - Page 7



**Paul M. Davis & Associates**
**The Lawyer For Patriots**

Paul M. Davis
Paul M. Davis & Associates, P.C.
9355 John W. Elliot Dr., #25454
Frisco, TX 75033
469-850-2930
paul@fireduptxlawyer.com

August 31, 2022

TikTok
Attn: Legal Department
5800 Bristol Pkwy
Culver City, CA 90230

*Sent via email to* legal@tiktok.com

> Re: Notice of intent to arbitrate regarding @fireduptxlawyer and @fireduptxlawyer2.0
> account bans

Dear Sir or Madame:

I am a litigation attorney licensed to practice law in the State of Texas. This letter is my notice that I intend to initiate arbitration against TikTok pursuant to the Terms of Service. Accordingly, please preserve all documents and communication related to the TikTok accounts identified herein.

I use TikTok primarily to post educational videos related to my law practice and to voice my political opinions. TikTok has been my primary source of new client leads since October 2021. My primary account, @fireduptxlawyer had over 170,000 followers and my @fireduptxlawyer2.0 account had roughly 3,000 followers. TikTok banned the @fireuptxlawyer account on or about August 2, 2022. As reflected in the attached PDFs, I emailed customer service to request a review of the ban. Customer service refused to answer my questions as to how I violated TikTok's community guidelines—because I have NOT violated the community guidelines in any way. After refusing to reinstate my account or answer my questions as to how I violated community guidelines, TikTok then banned my @fireduptxlawyer2.0 account.

TikTok's decision to ban my accounts is in violation of Chapter 143A of the Texas Civil Practice and Remedies Code. TCPRC § 143A.002 provides: "(a) a social media platform *may not censor a user*, a user's expression, or a user's ability to receive the expression of another person based on:

1

Exhibit C - Page 8

(1) the viewpoint of the user or another person; (2) the viewpoint represented in the user's expression or another person's expression; or (3) a user's geographic location in this state or any part of this state." TCPRC § 143A.007 provides: "(a) a user may bring an action against a social media platform that violates this chapter with respect to the user. (b) If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover: (1) declaratory relief under Chapter 37, including cost and *reasonable and necessary attorney's fees* under Section 37.009; and (2) injunctive relief."  Subsection (c) allows the court to hold Tik Tok in contempt if my video is not reinstated and provides for "daily penalties to secure compliance."  § 143A.002(c).  The definition of "censor" under chapter 143A is "block, ban, remove, deplatform, demonetize, de-boost, restrict, deny equal access or visibility to, or otherwise discriminate against expression."  CPRC § 143A.001(1).

Not only is TikTok in violation of Chapter 143A, but TikTok's decision to ban my accounts because of phantom "community guidelines violations" is tortious interference with my prospective business relationships.  By banning my accounts, TikTok has falsely represented to my followers, many of whom are prospective clients that I made some sort of misrepresentation that merited a ban on my accounts. There also may be violations of the Texas Deceptive Trade Practices Act ("DTPA") and privacy torts that I have yet to explore whereas TikTok's user agreement is essentially an unconscionable contract that allows TikTok to lure users to its platform with enticements that the platform will yield exposure to a large audience if a user wants to use the audience to generate business leads for financial gain.  Yet, the terms of service state that TikTok can ban your account at any time and for any reason while TikTok collects and sells the user's data, even after banning the user.  This may also constitute various privacy torts, which I am researching.

Regardless, this is my notice to TikTok that I intend to initiate an arbitration under the terms of service for TikTok's violations of Texas law in its decision to ban my accounts.  To the extent TikTok believes that Chapter 143A has been stayed by the federal courts in the case of *NetChoice, LLC v. Paxton*, 1:21-CV-840-RP, in the Western District of Texas, that case only applies to provisions that allow the Texas Attorney General to bring lawsuits against platforms and does not apply to Chapter 143A.

If my accounts are not immediately reinstated.  I will begin preparing an arbitration demand to be filed with the AAA, and will be seeking my attorneys' fees pursuant to Chapter 143A.  To the extent the DTPA applies, that statute provides for treble damages in additional to attorneys' fees. In banning my accounts, TikTok has severely damaged my ability to market my law practice.  Thus, I will fight these bans tooth and nail with every conceivable legal theory I find as I continue to research theories to hold TikTok accountable for its arbitrary bans of my accounts.

Sincerely,

Paul Davis

2

Exhibit C - Page 9

 AMERICAN ARBITRATION ASSOCIATION®

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| |
|---|
| 1. Which party is sending in the filing documents? (check one) ☑ Consumer. ☐ Business |
| 2. Briefly explain the dispute:<br>TikTok, Inc. banned two of my accounts: @fireduptxlawyer (170k+ followers) and @fireduptxlawyer2 (4k+ followers). Though these were personal accounts, I used them to generate a ton of business leads for my small law firm and other ventures. TikTok banned these accounts because of the politically conservative viewpoints I expressed in my posts. Texas Civ. Prac. & Rem. Code chapter 143A gives Texans a right to injunctive relief and attorneys' fees against social media platforms who censor their viewpoint. |
| 3. Specify the amount of money in dispute, if any: $ 0 |
| 4. State any other relief you are seeking:<br>☑ Attorney Fees. ☐ Interest. ☑ Arbitration Costs. ☑ Other; explain:  Injunctive relief to reinstate my accounts without restrictions. |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held:<br>City:  Dallas                                   State:  Texas |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. |

| **Consumer:** | | |
|---|---|---|
| Name:  Paul Davis | | |
| Address: 9355 John W. Elliott Dr., Suite 25454 | | |
| City:  Frisco | State:  Texas | Zip Code: 75033 |
| Telephone: ███████ | Fax: | |
| Email Address:  paul@fireduptxlawyer.com | | |

| **Consumer's Representative (if known):** | | |
|---|---|---|
| Name:  self-represented | | |
| Firm: | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |

| **Business:** | | |
|---|---|---|
| Name:  TikTok, Inc. | | |
| Address:  5800 Bristol Pkwy | | |
| City:  Culver City | State:  California | Zip Code:  90230 |
| Telephone:  719-240-2165 | Fax: | |
| Email Address:  legal@tiktok.com | | |

American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043
https://www.adr.org  |  AAA Customer Service 1-800-778-7879

Exhibit C - Page 10

 AMERICAN ARBITRATION ASSOCIATION®

**DEMAND FOR ARBITRATION**
**CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name: | | |
| Firm: | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |
| Date: | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

## RE: TikTok Legal Counsel

From  Weibell, Tony <aweibell@wsgr.com>

To     Paul M Davis<paul@fireduptxlawyer.com>

Date   Monday, November 14th, 2022 at 9:54 PM

Thanks Paul, I've passed along the info so legal and pull the accounts and see what is up.

Tony

## RE: TikTok Legal Counsel

From  Weibell, Tony <aweibell@wsgr.com>

To     Paul M Davis<paul@fireduptxlawyer.com>

Date  Wednesday, November 16th, 2022 at 10:16 PM

Hi Paul,

Another update here: TikTok legal is investigating and will respond to restore the account or provide an explanation for why they can't ASAP. I checked for an answer today and they are still waiting for the data they need.

Tony

On Nov 14, 2022 11:36 AM, "Paul M. Davis" <paul@fireduptxlawyer.com> wrote:

EXT - paul@fireduptxlawyer.com

Exhibit C - Page 12

## RE: TikTok Legal Counsel

From   Paul M Davis <paul@fireduptxlawyer.com>

To     Weibell, Tony<aweibell@wsgr.com>

Date   Thursday, November 17th, 2022 at 10:29 AM

Thanks for the update, Tony.

I'll hold off on filing my lawsuit for now, but if they don't get back to me by Sunday night, I'm filing. To put things in perspective, I've been waiting a long time to get my TikTok account back. I lost an audience of 170k and this has not only hurt my business but has taken a tremendous emotional toll on me since I worked so hard to create engaging content and build my audience.

Having your speech silenced and followers taken away feels like being suffocated, and I can't stand it for another minute. I have done nothing to objectively violate TikTok's community guidelines. The only parts they could point regard spreading "misinformation" and other entirely subjective provisions related to personal viewpoint. There is legitimate public debate and informational sources regarding everything that I post. Under Texas law, TikTok does not get to subjectively determine what is and what is not accurate information and legitimate viewpoints. This is exactly the type of information that is prohibited from being banned under Texas HB 20. I hope TikTok will do the right thing and respect my fundamental civil rights under Texas law.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook

Sent with Proton Mail secure email.

Exhibit C - Page 13

# EXHIBIT D
# META EMAILS

**Fact Check Appeal and Cease and Desist**

From   Paul M Davis <paul@fireduptxlawyer.com>

To      Appeals<appeals@leadstories.com>

CC     Clayton, Taj J.<taj.clayton@kirkland.com>

Date   Monday, September 5th, 2022 at 11:08 AM

Good morning,

I am writing to appeal the fact-check Lead Stories placed on my Instagram account, @fireduptxlawyer for a video post on August 22, 2022 regarding the death of actress Anne Heche and for additional fact-checking censorship that occurred this past Saturday, September 3. Please review the attached cease and desist letter and immediately notify Instagram that you are reversing all of the false and tortious fact-checks you have placed on my account, or I will be filing a lawsuit early next week.

Lead Stories has until 5pm CST September 12, 2022 to comply with this request. Every day that goes by where my account is still censored and falsely fact-checked is an additional day my law practice is suffering damages that will be assessed against Lead Stories in the lawsuit if Lead Stories fails to cease its tortious conduct toward me. Thank you. I am copying Meta Platforms' outside counsel on this email.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook

Sent with Proton Mail secure email.

**2.17 MB**   1 file attached

| Cease and Desist re @fireduptxlawyer.pdf 2.17 MB |



Paul M. Davis
Paul M. Davis & Associates, P.C.
9355 John W. Elliot Dr., #25454
Frisco, TX 75033
469-850-2930
paul@fireduptxlawyer.com

September 5, 2022

Lead Stories
Attn: Instagram Appeals
Leadstories.com

*Sent via email to* appeals@leadstories.com

Re: Cease and desist tortious interference with prospective business relations and existing contract, defamation, and censorship in violation of Texas law.

To Whom It May Concern:

I am a litigation attorney licensed to practice law in the State of Texas. As reflected in the attached screenshots, Lead Stories ("LS") has "fact-checked" my Instagram account. As described below, because I use my Instagram account for the primary purpose of generating leads for my law practice, LS's fact checking activity on my account constitutes tortious interference with prospective business relations under Texas law. It is also tortious interference with the Instagram user agreement. In addition, LS's fact-checking caused Instagram to censor my account in violation of Texas Civil Practice & Remedies Code ("TCPRC") chapter 143A. Accordingly, I demand that LS immediately cease and desist its tortious "fact-checking" of my Instagram account or I will initiate a lawsuit against both LS and Meta Platforms, Inc. in Texas state district court in Collin County, Texas.

On August 22, I posted a video to my @fireduptxlawyer Instagram account regarding the death of actress, Anne Heche, in which I put forth factual information regarding the timeline and events of her death. I asked questions of my audience as to whether they believed that her death was merely an accident. For this, LS "fact-checked" my video and stated in the fact check label on my video: "Fact Check: Anne Heche was NOT murdered by the Illuminati, And Was NOT In a Movie About Jeffrey Epstein."

Nothing about this statement is accurate. At no point in this video do I claim that the "Illuminati" murdered Anne Heche. I ask if my audience believes it is possible that Heche was

1

murdered for her work related to an upcoming film about child sex trafficking and a past film about "chemtrails." I also never claimed she was in a movie about Jeffrey Epstein. There is not a single fact mentioned in this video that is false. Asking questions of my audience about whether they believe reports that Heche's death was an accident is NOT a statement of fact. Regardless, LS's statements that I said Anne Heche was murdered by the Illuminati and was in a movie about Jeffrey Epstein constitute defamation and tortious interference with an existing contract and prospective business relations.

Under Texas law, the elements of a cause of action for tortious interference with prospective business relations are the following: (1) There was a reasonable probability that the plaintiff would have entered into a business relationship with a third person, (2) the defendant intentionally interfered with the relationship, (3) the defendant's conduct was independently tortious or unlawful, (4) The interference proximately caused the plaintiff's injury, and (5) the plaintiff suffered actual damage or loss. *E.g., Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex.2013). Here, all five elements are easily met against LS.

Most of my client leads for my law firm come through social media, with a large portion coming from Instagram. Since LS falsely "fact-checked" me, I've had a significant drop-off in new client appointments scheduled. LS clearly intended to fact check me and has knowledge from this video that its fact checking statements were false. The conduct was independently tortious because it was defamatory/libelous.

To state a cause of action for defamation/libel in Texas, a plaintiff must show the following: (1) the defendant published a false statement of fact that referred to the plaintiff, (2) the statement was defamatory, (3) in making the statement, the defendant was either negligent or acting with actual malice, and (4) the plaintiff suffered injury or injury is presumed. TCPRC 73.001; *e.g., Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). LS's statement placed on my post was clearly false. It was defamatory because it accuses me of making false statements online, which is damaging to my reputation as a lawyer and as an aspiring journalist that has caused financial injury to my business. LS's conduct was at least negligent because a reasonable person would recognize that I did not make the statements of fact that LS claims I did.

LS's actions also tortiously interfered with my user agreement with Instagram by causing Instagram to censor my account. Immediately after LS's tortious action, I observed my story views dropping from at or around 1,000 views to below 200, and I observed a substantial drop in engagement on my account in likes, comments, and new followers. Thus, LS's actions interfered with my agreement with Instagram (Meta Platforms) by which I am able to make posts to my account that are visible to my audience without restriction.

Meta's action in censoring my Instagram account because of LS's so-called "fact-checking" is a violation of violation of TCPRC Chapter 143A. TCPRC § 143A.002 provides: "(a) a social media platform *may not censor a user*, a user's expression, or a user's ability to receive the expression of another person based on: (1) the viewpoint of the user or another person; (2) the viewpoint represented in the user's expression or another person's expression; or (3) a user's geographic location in this state or any part of this state." TCPRC § 143A.007 provides: "(a) a user may bring an

2

action against a social media platform that violates this chapter with respect to the user. (b) If the user proves that the social media platform violated this chapter with respect to the user, the user is entitled to recover: (1) declaratory relief under Chapter 37, including cost and ***reasonable and necessary attorney's fees*** under Section 37.009; and (2) injunctive relief."  Subsection (c) allows the court to hold Tik Tok in contempt if my video is not reinstated and provides for "daily penalties to secure compliance."  § 143A.002(c).  The definition of "censor" under chapter 143A is "block, ban, remove, deplatform, demonetize, de-boost, restrict, deny equal access or visibility to, or otherwise discriminate against expression."  CPRC § 143A.001(1).

      In addition to the above actions, on September 3, 2022, I received roughly a dozen "fact check" violations of unknown origin, as evidenced by the attached screenshots.  To the extent these violations are the result of additional false fact-checking by LS, those will be grounds for additional liability against both LS and Meta.  Accordingly, I demand that LS immediately remove its false "fact-checking" from my Instagram account and notify Meta that it is retracting its fact-checking of my account.  If I do not receive confirmation that the "fact-checking" and restrictions are removed from my account by September 12, 2022, then I will initiate a lawsuit against both LS and Meta for the causes of action described above.  Thank you for your attention to this matter.

      Sincerely,

      Paul Davis

CC: Taj Clayton, outside counsel for Meta Platforms, Inc.
*Via email to* taj.clayton@kirkland.com

3



## False

Independent fact-checkers say this information has no basis in fact.

---



**Fact-Checker:** Lead Stories

**Conclusion:** False

**More Information:** Fact Check: Anne Heche Was NOT Murdered By The Illuminati, And Was NOT In A Movie About Jeffrey Epstein | Lead Stories

You can **send them an email** if you think there was a mistake.

Learn more about how Instagram is working with independent fact-checkers to reduce false information.



**Saturday**
10:46 PM

Edit

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h

 According to independent fact-checkers or our Community Guidelines, your account has repeatedly posted false information. Restrictions will apply to your account for up to 90 days. 2h



## Re: Fact Check Appeal and Cease and Desist

From  Alan Duke <alan@leadstories.com>

To  Paul M Davis<paul@fireduptxlawyer.com>

CC  Appeals<appeals@leadstories.com>, Clayton, Taj J.<taj.clayton@kirkland.com>

Date  Monday, September 12th, 2022 at 11:41 AM

Mr. Davis,

The Meta terms of service to which you agreed in order to be able to use Instagram include provisions about content being subject to fact checking and labeling and names the fact checking organizations that are involved with this. The guidelines for Meta's third party fact checkers (https://www.facebook.com/business/help/341102040382165?id=673052479947730) specifically state the one of the reasons for labeling a post as "False" is content that consists of:

Conspiracy theories that explain events as the secret work of individuals or groups, which may cite true or unverifiable information but present an implausible conclusion.

At the end of your video you specifically say "It does seem like a possible explanation", refering to the entire "Anne Heche was murdered" theory expounded on in the video. This goes beyond just asking the opinion of your viewers.

At the 2:30 mark (or thereabouts) the video claims Heche was currently promoting a movie about child sex trafficking and during this segment video of Jeffrey Epstein is shown, in a way that clearly implies this has to do with the movie.

We would like to remind you that the Meta guidelines also offer you the option to simply issue a correction to get the strike lifted: https://www.facebook.com/business/help/997484867366026?id=673052479947730

Kind Regards,
The Lead Stories Appeals Department

On Mon, Sep 5, 2022 at 12:18 PM Paul M. Davis <paul@fireduptxlawyer.com> wrote:
https://www.instagram.com/reel/ChkWamVgbXL/?igshid=YmMyMTA2M2Y=

Sent from Proton Mail for iOS

On Mon, Sep 5, 2022 at 11:10 AM, Alan Duke <alan@leadstories.com> wrote:
Please send the link to your post for review.
Lead Stories

## Re: Fact Check Appeal and Cease and Desist

From  Paul M Davis <paul@fireduptxlawyer.com>

To     Alan Duke<alan@leadstories.com>

CC    Appeals<appeals@leadstories.com>, Clayton, Taj J.<taj.clayton@kirkland.com>

Date  Monday, September 12th, 2022 at 4:04 PM

Alan,

As you stated, the user terms labeling a post as "False" includes "Conspiracy theories that explain events as the secret work of individuals or groups, which may cite true or unverifiable information but present an implausible conclusion."

I cited the factual timeline and unusual circumstances of Heche's death. It is not "implausible" to merely conclude that it is a possibility she was murdered. How is your conclusion that this is "implausible" anything other than your subjective conclusion? My statement is not objectively implausible, you and Meta just want to censor my viewpoint, which is a violation of Texas anti-censorship law.

Moreover, you fail to address the fact that Lead Stories defamed me to my Instagram audience by accusing me of saying Anne Heche was "murdered by the Illuminati" (which I did not say not do I believe) and, therefore, tortiously interfered with my prospective business relationships.

Please respond to these issues by Friday, or I am moving forward with the lawsuit. I will be suing you personally, as well, if you fail to respond.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook


Sent with Proton Mail secure email.

### Reply concerning fact check appeal with Lead Stories

From   Alan Duke <alan@leadstories.com>

To       Paul M Davis<paul@fireduptxlawyer.com>, Appeals<appeals@leadstories.com>

Date   Friday, September 16th, 2022 at 1:08 PM

You may have noticed that we updated our article several days ago to make it clearer that the claim we were debunking was not reliant on the Illuminati aspect.

We noted that some of those sharing the murder claim did not specify that it was the Illuminati.

We believe this should address your concerns.

Lead Stories



11/20/22, 4:15 P

**Re: Reply concerning fact check appeal with Lead Stories**

From  Paul M Davis <paul@fireduptxlawyer.com>

To  ldolan@fb.com, mlenneville@fb.com

CC  Appeals<appeals@leadstories.com>, Alan Duke<alan@leadstories.com>,
Clayton, Taj J.<taj.clayton@kirkland.com>

Date  Wednesday, September 21st, 2022 at 10:40 AM

Good morning, Liza and Mitchell,

Another political influencer, Lily Kate (@itslilykate) gave me your contact info because you helped her resolve her issues with account restrictions. I'm bringing you in on this because Meta's third-party fact checking contractors have not resolved my account issues. I also think many of my account issues are directly with Meta, so I am asking for your help on this.

Here is a summary of what is going on with my account, @fireduptxlawyer :

I am a civil and constitutional right lawyer who makes content on Instagram about both law and politics. I have a clear conservative viewpoint in my content. My account was growing steadily (probably 20-40 new followers per day) over the last year but really took off after I posted a video of me serving a tyrannical school board president with a civil rights lawsuit because she had police remove members of the public for expressive a viewpoint she disagreed with. After that, my account consistently grew in much larger numbers and engagement. Here is a link to a .zip file containing all the screenshots, videos, and documents referenced below: https://drive.google.com/file/d/1T74hy3RrITwZD2wlPkpZZ_EoJmJXVE4X/view?usp=sharing

As shown in the linked screenshot, I was getting around 1,000 views daily on my stories and usually gaining roughly 50+ new followers per day on average. Then, suddenly one day, Instagram clearly started "shadowbanning" my account. I noticed that in one day's time, I stopped getting new followers and actually started losing followers, which was highly unusual because my content did not change. I noticed my average story views dropped to below 200 and my follower count was essentially frozen at 17.2k. A trickle of new followers would push me to 17.3 and then my account would almost immediately go back down to 17.2. I noticed this began to occur sometime in late June. I knew something was very wrong when I attended a TPUSA conference around that time and some of my favorite fellow influencers were unable to find my account using the search function. I'm linking a screen recording of this phenomenon.

Finally, around August 22, I noticed my account restrictions disappear. My story views went back up to 1,000+ and my posts had a normal amount of engagement. This lasted for one day. I posted a video that gave a factually accurate account of the timeline of actress, Anne Heche's death, and I commented that I thought the facts didn't add up and speculated that that foul play may have been involved because she was working on a film project to expose child sex trafficking. This is 100% my viewpoint.

Lead Stories "fact-checked" and censored my Anne Heche video and immediately all of the restrictions on my

account that I had endured for months returned. Lead Stories claimed that I said in my video that the "Illuminati" had murdered Anne Heche, which was defamatory because I did not say that. They have since removed that statement, thankfully, but refused to remove the "fact-check" on that post. Since then, my account has been even more restricted than it was before. Other accounts now receive warnings when they try to tag me in anything (see linked screen recording), and engagement on my posts and story views have never been lower--now averaging around 150 views.

I am bringing this to your attention because Meta's shadowbanning and restriction of my account is now illegal under Texas law pursuant to HB20. This past Friday, the 5th Circuit Court of Appeals rejected a constitutional challenge to the Texas law and adamantly upheld its constitutionality (see linked 5th Circuit opinion). I do not wish to sue Meta for violating HB20, but my law firm runs on leads generated from social media and Instagram is my largest source of leads.

HB20 specifically prohibits shadowbanning and moving me down in the algorithms. If you read the other emails in this chain, Lead Stories claims I am being censored because I made a statement that is not plausible in my Anne Heche video. Plausibility is a highly subjective standard. In my view, it is less plausible that Anne Heche died in the way it is claimed she died (I can go into detail if need be). Regardless, my point is that Meta is currently censoring my Instagram account because of my viewpoint in violation of Texas HB20 (see linked letter), and I would very much like your assistance in removing all restrictions from my account to avoid a litigation. I am also copying Meta's Texas attorney on this email, though he has failed so far to respond.

Please let me know how we can resolve this. Thank you.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook


Sent with Proton Mail secure email.

------- Original Message -------
On Friday, September 16th, 2022 at 1:08 PM, Alan Duke <alan@leadstories.com> wrote:

> You may have noticed that we updated our article several days ago to make it clearer that the claim we
> were debunking was not reliant on the Illuminati aspect.

## Re: Following up on account restrictions

From   Paul M Davis <paul@fireduptxlawyer.com>

To     ldolan@fb.com, mlenneville@fb.com

Date   Thursday, November 17th, 2022 at 4:09 PM

Good afternoon,

Just following up on this. There are still shadowban restrictions on my Instagram account.  Please let me know what community guidelines I have violated and how I violated them just would justify the restrictions on my account while keeping in mind that it is now unlawful in the state of Texas for Meta to censor a user based on their viewpoint after the 5th Circuit affirmed the constitutionality of our statute (see opinion attached), Texas Civil Practice & Remedies Code Chapter 143A (HB20). If I have not violated any guidelines other than expressing my viewpoint, please remove the restrictions from my account.

In addition, Meta banned my original Facebook and Instagram accounts back in January 2021. These accounts were associate with the email address pauldavis@utexas.edu. I believe the Instagram username was @Who_Is_Paul_Davis or something similar to that. Regardless, you should be able to locate these accounts using the email address. Please restore these accounts and remove all restrictions since continuing to ban them is now unlawful in Texas. Thank you.

Best regards,
Paul Davis

Paul M. Davis & Associates, P.C.
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
945-348-7884
paul@fireduptxlawyer.com
Follow @fireduptxlawyer
on Instagram, GETTR, Truth Social,
Rumble, TikTok, Twitter, & Facebook

Sent with Proton Mail secure email.

Exhibit D - Page 13